**SIGNED.**

**Dated: May 25, 2010**



_____
**JAMES M. MARLAR**
**Chief Bankruptcy Judge**
_____

UNITED STATES BANKRUPTCY COURT

DISTRICT OF ARIZONA

In re: )
 ) Chapter 11
LINDA VISTA CINEMAS, L.L.C., , an )
Arizona limited liability company, dba ) Case No. 4-10-bk-14551-JMM
Tower Theatres, )
 ) **MEMORANDUM DECISION**
 Debtor. )
_____ )

## **INTRODUCTION**

A hearing was held on May 24, 2010, concerning the Debtor's request for a 11 U.S.C. § 105(a) injunction against Bank of Arizona ("Bank") to enjoin it from foreclosure against the collateral of certain non-debtor guarantors of the Debtor's obligation to the Bank. Those foreclosures are scheduled to occur tomorrow, May 26, 2010.

## **DISCUSSION**

In response to various and related collection actions by Bank, the Debtor filed Chapter 11 on May 12, 2010. Yesterday, the court took evidence on the Debtor's request to enter a preliminary injunction against the Bank, and prevent it from proceeding against non-debtor guarantors pending

further orders. Such injunction, if granted, could not extend beyond a plan confirmation. <u>In re American Hardwoods</u>, 885 F.2d 621 (9th Cir. 1989).

This court has jurisdiction, and the equitable power to grant such relief, if the Debtor can prove that without the injunction, the Bank's collection actions might negatively affect the Debtor's reorganization. <u>Hardwoods</u>, <u>supra</u>. However, in order to obtain such injunction, the usual standards for a preliminary injunction must be proven. <u>In re Excel Innovations, Inc.</u>, 502 F.3d 1086 (9th Cir. 2007).

Factually, the Debtor borrowed $5,293,000 from the Bank in October, 2006. As of May 12, 2010, it had paid the loan down to approximately $3,131,977. However, due to a general economic downturn, unforeseen when the "startup" loan was made, the Debtor's cash flows failed to meet projections, and it has been in default in payment terms since approximately October, 2009. When negotiations failed, the Bank began pursuit of the Debtor and its collateral, as well as proceeding against the guarantors and their pledged collateral. The loan is cross-collateralized against all entities, and the Bank and the affected parties believe the values of the Bank's collateral are:

| | | |
|---|---:|---|
| Cutler residence | $1,200,000 | |
| Cutler Fire-land | 388,000 | |
| Edwards residence | -0- | |
| Grand Cinemas personalty | 50,000 | |
| Debtor's personalty | 549,837 | (Ex. 1) |
| | $2,187,837 | |

If accurate, the Bank is, therefore, a secured creditor for $2,187,837, and an unsecured creditor for $944,140. In comparison to the other creditors, in each class, the Bank holds the lion's share of the indebtedness owed by the Debtor.

2

Case 4:10-bk-14551-EWH    Doc 34    Filed 05/25/10    Entered 05/25/10 15:41:29    Desc
Main Document    Page 2 of 8

If a preliminary injunction is not granted, the testimony was that the four guarantor groups would file Chapter 11 before the May 26, 2010 foreclosure date. If they do so, they will be prevented, by virtue of their respective fiduciary responsibilities to their own creditors, from contributing cash or assets to this Debtor's reorganization. Or, should they be allowed to do so, in their separate Chapter 11 cases, the efforts would be severely complicated by the rules and statutes governing each bankruptcy case. In Mr. Cutler's case, for example, he is prepared, in 2010, to inject $250,000 into the Debtor's operations. Doing so in the context of his own Chapter 11 would be very difficult, if it could be accomplished at all.

Instead of having one Chapter 11 case to deal with, the Bank and the parties would then be embroiled in managing five cases, at five times the expense and an exponential increase in uncertainty. The Debtor would lose the ability to leverage the assets of the non-debtors, as well as their credit, in aiding its reorganization.

The court can fashion relief that satisfies its equitable duties. Clearly, the Debtor must present a confirmable, feasible plan if it is to survive. While the law allows the Debtor a chance to do so, it may not have an inordinate time period to accomplish this end. This is because the Debtor is losing money, and is being supported only by significant capital contributions from its guarantors. And, because the Bank is not being paid much for having to wait (only a $10,000 monthly adequate protection payment), the Bank is currently bearing a large risk.

But allowing the Bank to go forward now, to foreclose on guarantors' assets, would surely doom any chance of reorganization for the Debtor, and perhaps for four other future debtors as well. A sufficient factual record was made to show that allowing the Bank's current foreclosures to proceed would negatively impact the Debtor's reorganization ability. Chapter 11 is intended to

3

provide second opportunities to debtors, provided that, within a reasonable time, the Debtor can present a feasible reorganization plan.

## APPLICATION OF FACTS TO THE LAW

In order to grant non-debtor guarantors a § 105(a) injunction, the court must find, from the proof, that certain elements have been dealt with in a persuasive manner. Since the type of injunction sought is labeled "preliminary," the court notes that nonetheless, the decisional outcome of this matter is a final order for purposes of review. In re Excel Innovations, Inc., 502 F.3d 1086, 1092 (9th Cir. 2007). This is because these types of proceedings cannot extend beyond confirmation of a plan of reorganization. Hardwoods at 625.

In Excel, the Ninth Circuit instructed bankruptcy courts to "consider whether the debtor has a reasonable likelihood of a successful reorganization, the relative hardship of the parties, and any public interest concerns if relevant." Id. at 1096.

### A. Reasonable Likelihood of Reorganization

From the evidence, the court finds, at this very early stage of the proceedings, that the Debtor has a reasonable likelihood that it can successfully reorganize. This "is not a high burden" for the Debtor. Excel at 1097.

As the instant issue requires an equitable decision, the court notes that the case has only been on file for 14 days. The statute contemplates that a debtor-in-possession may have 120 days within which to exclusively file a plan. 11 U.S.C. § 1121(b).[1] As in all equitable events, the court must strike a reasonable balance between the rights of debtors and the rights of

---

[1] The statute even sets an outside date of 18 months. 11 U.S.C. § 1121(d)(2)(A).

4

their creditors. The process is a continuum, with the equities favoring the debtor at the beginnings of a case, but moving toward the creditors as a case moves along, unless tangible progress is made in the reorganization process.

Here, the facts demonstrated that there is a reasonable likelihood that this Debtor may successfully reorganize. Such facts include: (1) the guarantors, Cutler Fire and Grand Cinema, are profitable operating businesses, which may -- given time -- utilize and leverage their good credit and assets toward either new capital contributions or gaining new credit for the Debtor; (2) the principals' expertise in running profitable movie houses in the Tucson area; (3) the ability of the guarantors to maximize the use of their pledged assets towards this debtor's reorganization, which would otherwise be lost if foreclosures were to occur; (4) the proven success of the guarantors in other, or similar, businesses in Tucson, yields opportunities to perhaps garner other equity investors, or to refinance the Debtor's obligations on more favorable payment and/or credit terms, such as longer periods or lower interest rates; (5) the statement that a reorganization plan might be filed within the next 30-60 days, as a full payment plan. This statement indicates that this case will not drag out in such a manner as to harm creditors; (6) the Debtor has already obtained approximately $257,000 in deferred rent from another primary creditor, its landlord, who appears to be favorably included towards the Debtor, and keeping it at its established location (Ex. 1, Schedule F).

**B.      Hardship**

The Ninth Circuit has also required bankruptcy courts to balance the relative hardships of the parties.

5

At this stage of the case, the court finds and concludes that the harm to the Debtor far outweighs the harm to the Bank, if the injunction is not granted. This is partially because the Bank presented no credible evidence that its real estate collateral would diminish in value from its current estimates. Although the Bank's witness, Mr. Cohen, testified that the collateral assets will depreciate between now and the time a plan is vetted, he had no appraisal or other evidence to support that conclusion. Consequently, as the Ninth Circuit explained in Excel, "Speculative injury cannot be the basis for a finding of irreparable harm." Id. at 1098. Bank's counsel, in argument, stated that the guarantors' other creditors might proceed against them while the Bank was stayed, but acknowledges that he knew of no such actual fact.

On the other hand, foreclosure upon the guarantors' assets will clearly hinder their ability to utilize those assets in assisting the Debtor, and keeping them viable will better enable them to contribute positively to the Debtor's eventual reorganization. If they are forced into Chapter 11 proceedings of their own, then a domino effect will add considerable risk and uncertainty to this Debtor's ability to survive, and its ability to present a feasible plan of reorganization will be destroyed. Four new Chapter 11 cases will also crush the existing credit abilities of each of those guarantors, which then only accelerates the Debtor's demise.

Clearly, the hardship balancing test favors the Debtor.

**C.  Public Policy**

Public policy, to the extent that it is applicable, also favors the Debtor. Chapter 11 is a last resort for any debtor. If the injunction is not granted, two sets of individual debtors, and two businesses, would be forced to fill their own bankruptcy cases, so that their assets are not lost to

6

foreclosure.  In that event, many employees would be affected, as would the future of those businesses.  The credit of the individuals would be impaired for at least a decade.

**<u>CONCLUSION</u>**

The court does not take the issues in this case lightly.  In recognition that a Chapter 11 filing only allows a pause in legal proceedings, and is not an end in itself, the court has the power to "expeditiously and economically" manage the Chapter 11. 11 U.S.C. § 105(d)(2).  To that end, an order will be entered which requires the filing of a plan and disclosure statement by a date certain, and which moves the matter forward to confirmation.

Although the guarantors are hereby granted a brief reprieve from honoring their contractual obligations, the parole will be brief.

The parties are urged to attempt to resolve their differences consensually, in the hopes that further expense and uncertainly is minimized.

Therefore, a preliminary injunction will be granted, and the pending foreclosures stayed, with the following qualifications:

1. The Debtor shall files its plan and disclosure statement by August 24, 2010;
2. A hearing on the disclosure statement shall be held on September 23, 2010 at 1:30 p.m.; and
3. A confirmation hearing on the Debtor's plan shall be held on October 27, 2010 at 1:30 p.m.

The court reserves the power to alter these dates, depending on circumstances.  Counsel for the Debtor shall present a separate order.

7

Dated and signed above.

Notice to be sent as indicated below:

Isaac D. Rothschild, Esq.  ecfbk@mcrazlaw.com
Michael W. McGrath, Esq.
Mesch Clark & Rothschild, PC
259 North Meyer Avenue
Tucson, AZ  85701

Gerald L. Shelley, Esq. gshelley@fclaw.com
Fennemore Craig, P.C.
3003 North Central Ave., Suite 2600
Phoenix, AZ  85012-2913

Office of the U.S. Trustee  elizabeth.c.amorosi@usdoj.gov
230 N. First Ave., Suite 204
Phoenix, AZ 85003-1706

8